Angela JONES–SWAN and Charles W. Swan, Appellants

v.

Kelly LUTHER and Michele Luther, Appellees

NO. 2015–CA–000133–ME

Court of Appeals of Kentucky.

RENDERED: NOVEMBER 20, 2015; 10:00 A.M.

BRIEF FOR APPELLANTS: Jeremy Scott Aldridge, Carey Hendricks Aldridge, Elizabethtown, Kentucky

BRIEF FOR APPELLEES: Barry Birdwhistell, Tyler Birdwhistell, Elizabethtown, Kentucky

BEFORE: JONES, D. LAMBERT, AND THOMPSON, JUDGES.

*OPINION*

JONES, JUDGE:

The Appellants, Angela Jones–Swan and Charles W. Swan, request reversal of the trial court's order overruling their petition to be declared *de facto* custodians of two minor children born to the Appellees, Kelly Luther ("Father") and Michelle Luther ("Mother"). Having reviewed the record, we affirm because the Appellants cannot rely on the times during which Father and Mother were seeking custody of the children in different legal proceedings (dissolution of marriage and emergency protec-

tive order) to meet the six-month period set forth in KRS [1] 403.270(1)(a).

## I. Factual and Procedural Background

The two minor children at issue are fraternal twins born in October of 2013. Mother and Father voluntarily placed the children in Appellants' care on November 18, 2013. At that time, Father told Appellants that he was planning on obtaining sole custody of the children as part of his divorce from Mother. Father commenced the dissolution of marriage action in November of 2013 and a final decree of dissolution was entered in February of 2014. The final decree incorporated the parties' property settlement agreement. As part of the property settlement agreement, the parties agreed that Father would have sole legal custody of the children, with Mother to have time-sharing. In May of 2014, Mother filed an emergency protective order seeking to obtain custody of the children. Later, she sought to have the dissolution decree modified so that she would have joint legal custody of the children. Ultimately, her efforts failed.

In May of 2014, Father traveled to Michigan, where Appellants were living with the children, and demanded that Appellants return the children to him. Initially, Appellants refused. However, they ultimately relented and relinquished custody of the children to Father on June 4, 2014. Thereafter, on June 25, 2014, Appellants filed a petition seeking to be declared the *de facto* custodians of the children. The trial court denied the petition on the ground that the Appellants did not have possession of the children when they filed their petition.

This appeal followed.

1. Kentucky Revised Statutes.

## II. Standard of Review

The family court's determination that Appellants were not *de facto* custodians of the children was a conclusion of law based on facts that were uncontested. Accordingly, our review of this decision is *de novo. Laterza v. Commonwealth*, 244 S.W.3d 754, 756 (Ky.App. 2008). "Under this standard, we afford no deference to the trial court's application of the law to the facts found." *Id.*

## III. Analysis

KRS 403.270 governs determination of *de facto* custodian status. It defines a *"de facto* custodian" as "a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services." KRS 403.270(1)(a).

During the relevant time period, the children at issue were under three years of age and were not placed in Appellants' care by the Department for Community Based Services. Accordingly, Appellants had to prove by clear and convincing evidence that they were the primary caregivers and financial supporters of the children for a period of six months or more, during which time the children resided with them. Citing *Sullivan v. Tucker*, 29 S.W.3d 805 (Ky.App. 2000), the trial court read the statute as requiring that the *de facto* custodian must have possession of the children at the time the petition is filed with the court.

*Sullivan* does not stand for this proposition. To the contrary, we were clear in

*Sullivan* that physical possession of the child is *not* required at the time the petition for *de facto* custodian status is filed: "*Nor is it to say,* as the trial court opined, that possession of the child is a necessary prerequisite to recognition of *de facto* custodian status." *Id.* at 808 (emphasis added); *see also, S.S. v. Commonwealth,* 372 S.W.3d 445, 447 n. 2 (Ky.App. 2012) ("Possession of the child is not a prerequisite to recognition as a *de facto* custodian."). So long as the petitioners can establish that the children at issue resided with them for the required period of time, and that during such time they were the primary caregivers for, and financial supporters of, the children, they have satisfied the statute. They do not have to file the petition while the children are residing with them. Indeed, many of these disputes arise after the children at issue have been removed from the possession of the individuals seeking to be declared *de facto* custodians. Thus, the trial court erred as a matter of law when it denied Appellants' petition on the basis that they did not have physical possession of the children when the petition was filed.

■ However, this does not end our inquiry. While the statute does not require physical possession at the time the petition is filed, it does require the Appellants establish that the children, both under three, resided with them for a period of six months prior to the filing of the petition. The statute is clear that "[a]ny period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period." KRS 403.270(1)(a).

It is undisputed that the children resided with Appellants from November 2013 through June 2014, a period of approximately seven months. However, it is also undisputed that Mother and Father were in the process of obtaining a divorce during much of this period, and that Father was seeking custody of the children as part of the divorce, which was pending from November 2013 through February 2014. Additionally, in May of 2014, Mother filed a petition for an emergency protective order in which she sought to regain custody of the children from Father. Because the dissolution proceedings were ongoing from November of 2013 until February of 2014, this period cannot be used to meet the six-month threshold. Likewise, the period during which Mother sought to regain custody of the children from Father in May of 2014 cannot be used to meet the six-month requirement. *See Robison v. Theele,* 461 S.W.3d 772, 777 (Ky.App. 2015)(citing *Heltsley v. Frogge,* 350 S.W.3d 807 (Ky. App. 2011)). When these two periods are excluded, it becomes clear that it is impossible for Appellants to meet the minimum six-month period required by KRS 403.270(1)(a).

Accordingly, while we disagree with the trial court's reasoning, we affirm its ultimate order dismissing Appellants' petition for *de facto* custodian status. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.,* 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

ALL CONCUR.